IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| JERMAINE RICHARDSON, | CASE NO. 1:21-cv-1875 |
| Petitioner, | DISTRICT JUDGE<br>CHARLES ESQUE FLEMING |
| vs. | |
| WARDEN WANZA JACKSON-<br>MITCHELL, | MAGISTRATE JUDGE<br>JAMES E. GRIMES JR. |
| Respondent. | **REPORT &<br>RECOMMENDATION** |

Petitioner Jermaine Richardson filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Richardson is in custody at the Warren Correctional Institution due to a journal entry of sentence in the case *State v. Richardson*, Cuyahoga County Court of Common Pleas, case numbers CR-18-628246-A and CR-18-628950-A. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be denied.

**Procedural background**

*Indictments and guilty pleas*

In May 2018, the Cuyahoga County grand jury issued an indictment charging Richardson with two counts of drug trafficking, two counts of drug possession, one count of possessing criminal tools, and one count of receiving

stolen property. Doc. 8-1, at 5–9 (Exhibit 1, case no. CR-18-628246-A). All of the charges, except for receiving stolen property, included a forfeiture specification. *Id.*

In June 2018, the Cuyahoga County grand jury issued an indictment charging Richardson with three counts of drug trafficking, three counts of drug possession, one count of possessing criminal tools, and one count of driving while under the influence of drugs or alcohol. Doc. 8-1, at 20–27 (Exhibit 6, case no. CR-18-628950-A). All of the charges, except for driving while under the influence, included forfeiture specifications. *Id.*

In both cases, Richardson retained counsel and pleaded not guilty. Doc. 8-1, at 11, 29 (Exhibits 2, 7).

In early October 2018, Richardson withdrew his not-guilty pleas and pleaded guilty to a reduced number of counts in both cases. In the first case, Richardson pleaded guilty to two counts of drug possession, one count of possessing criminal tools, and one count of receiving stolen property. Doc. 8-1, at 13. In the second case, Richardson pleaded guilty to three counts of drug possession, one count of possessing criminal tools, and one count of driving while under the influence. *Id.* at 31. The court nolled the remaining counts. *Id.* at 13, 31.

*Sentencing*

In late October 2018, the trial court sentenced Richardson. Doc. 8-1, at 15–16 (Exhibit 4), 33–34 (Exhibit 9), 145–65 (sentencing hearing). The court

2

gave Richardson the option of serving "two years flat" or serving five years of probation with the understanding that if Richardson violated probation, he would spend seven years in prison. *Id.* at 154, 158–60. Richardson chose probation. *Id.* at 156.

*Probation revocation*

On April 2, 2019, the trial court held a probation revocation hearing after Richardson tested positive for drugs in March, violating his probation. Doc. 8-1, at 169. The court declared Richardson indigent and appointed him counsel. *Id.* at 36. Counsel explained that Richardson had complied with the probation requirements and was doing well, until he was injured at work and began to self-medicate due to pain from that injury. *Id.* at 170–71. Counsel asked that the court continue Richardson's probation. *Id.* at 171–72. The trial court cited Richardson's long criminal history and ordered Richardson to serve his prison sentences: a seven-year sentence in case number CR-18-628950-A and a concurrent 36-month sentence in case number CR-18-628246-A. *Id.* at 18 (Exhibit 5); at 36 (Exhibit 10); at 176 (transcript). The court entered its judgment the next day. *Id.* at 36, 298.

*Delayed direct appeal*

On May 20, 2020, Richardson, through new retained counsel, appealed to the Ohio Court of Appeals for the Eighth Appellate District the trial court's April 3, 2019 judgment entry. Doc. 8-1, at 38–39, 42–43 (Exhibits 11, 12, case nos. CA-20-109735 and CA-20-109724). Richardson also filed under Ohio

3

Appellate Rule 5(A) motions for leave to file a delayed appeal. *Id*. at 47, 79 (Exhibits 13, 14). As cause for his untimely appeal, Richardson alleged that the trial court failed to notify him of his right to appeal and the 30-day limit for filing an appeal. *Id*. at 51, 83. On May 29, 2020, the Ohio court of appeals summarily denied Richardson's motions for leave to file a delayed appeal and dismissed Richardson's appeals. *Id*. at 110, 112, 114, 116 (Exhibits 15–18).

On June 8, 2020, Richardson moved the Ohio court of appeals to reconsider its ruling denying his motions for delayed appeal. Doc. 8-1, at 119, 186 (Exhibits 19, 20). Richardson added new arguments—that the trial court didn't advise him of his right to appointed counsel and that Richardson had not waived his right to appeal. *Id*. at 120–22, 188–89. Richardson's brief stated that he had a reasonable basis for his delay because he "was unable to secure funds to retain appellate representation until after thirty days had passed from both the sentencing entry and the disposition of the probation violation." *Id*. at 123, 190. Richardson also asked the court to exclude from his delay the 90-day period before he filed his brief, because the Ohio Supreme Court, due to the Covid-19 pandemic, had tolled state court deadlines effective on March 9, 2020. *Id*. On June 12, 2020, the Ohio court of appeals denied Richardson's motions for reconsideration. *Id*. at 252, 254 (Exhibits 21, 22).

On July 27, 2020, Richardson appealed to the Ohio Supreme Court. Doc. 8-1, at 256 (Exhibit 23). In his memorandum in support of jurisdiction, Richardson asserted the following propositions of law:

4

1. A defendant is denied his Sixth Amendment Rights under the United State Constitution, corresponding Provisions of the Ohio Constitution, and Ohio Statute when he is denied leave to appeal absent a record establishing a knowing, intelligent, voluntary waiver of that right.[1]

2. A trial court errs when it violates Criminal Rule 32.1 by failing to advise Defendant about his appellate rights.

3. A defendant is denied his Sixth Amendment Rights Under the United State Constitution and corresponding Provisions of the Ohio Constitution when the Court appoints unrequested counsel, unfamiliar with the case, though Defendant had retained counsel.

4. An Indigent defendant is denied his Sixth Amendment Rights Under the United State Constitution and corresponding Provisions of Ohio Constitution when the court fails to appoint him appellate counsel.

5. A defendant is Denied his Statutory and Constitutional Rights when the trial court imposes consecutive terms following a probation violation hearing absent statutorily required findings.

6. The Court erred when it denied the defendant the right to speak at sentencing.

7. A defendant's plea is not knowingly, intelligently, and voluntarily entered, and thus unconstitutional, when the trial court and defense counsel offer a maximum sentence colloquy inconsistent with the maximum sentence issued by the trial court.

---

[1]    In this report and recommendation, I've reproduced Richardson's assignments of error and grounds for relief as written.

Doc. 8-1, at 261 (Exhibit 24). The state filed an opposition brief, arguing that the only legitimate issue on appeal was the propriety of the Ohio court of appeals' denial of Richardson's motion for leave to file a delayed appeal and not the other six issues listed in Richardson's memorandum. *Id.* at 286 (Exhibit 25). On September 29, 2020, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Richardson's appeal.[2] *Id.* at 274 (Exhibit 26).

*Federal habeas corpus petition*

On September 29, 2021, Richardson, through counsel, filed a federal habeas corpus petition under 28 U.S.C. § 2254, Doc. 1, and a brief in support of his Petition, Doc. 1-2. He raised the following grounds for relief:

> **Ground one**: Defendent was denied to Sixth Amendment Right when he is denied leave to file a delayed appeal absent a knowing voluntary waiver of that right.
>
> *Supporting facts*: The plea and sentencing transcripts are void of any reference to petitioner's right to appeal. The court does not advise petitioner of his rights, nor make a record of waiver of rights.
>
> **Ground two**: Defendant is denied 6th Amendment Right to Counsel of choosing when the trial court appoints appellate counsel unfamiliar with the case, though paetitioner had retained counsel.
>
> *Supporting facts*: Petitioner was sentenced to community control sanctions with retained counsel. Upon a probation violation hearing, the Court

---

[2]    Ohio Supreme Court Justice Donnelly dissented "and would accept the appeal on proposition[s] of law Nos. IV through VI." *State v. Richardson*, 153 N.E.3d 117 (Ohio 2020) (table).

refused to wait for familiar retained counsel and appointed unfamiliar counsel to immediately stand in while petitioner was sentenced to seven years for a single probation violation.

**Ground three**: An indigent defendant is denied his Sixth Amendment Rights when the tiral court fails to appoint appellate counsel.

*Supporting facts*: Here the trial court made a finding of indigency immediately prior to imposing a seven year sentence but failed to appoint appellate counsel.

**Ground four**: A defendant's plea is not knowingly intelligently and voluntarily made where trial court offers a plea colloquy inconsisten with the maximum sentence issued by the trial court.

Doc. 1, at 6–11. The Warden filed a Return of Writ, Doc. 8, and Richardson filed a Traverse, Doc. 11.

**Grounds two, three, and four are barred by the statute of limitations**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214 ("AEDPA"), provides a one-year limitations period in a habeas action brought by a person in custody from a state court judgment. 28 U.S.C. § 2244(d)(1).

*1.    Richardson's one-year limitations period began running when Richardson's judgment became final*

The limitations period runs from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The Warden asserts that section 2244(d)(1)(A) provides the start date for the one-year limitations period for Grounds two, three, and four—all stemming from, at the latest, Richardson's April 2, 2019 probation revocation hearing. Doc. 8, at 10. The Warden submits that Richardson's case became "final" on May 2, 2019, when the 30-day period within which to appeal the trial court's judgment had passed without Richardson having filed an appeal. *Id*. at 10. The Warden observes that, as to section 2244(d)(1)(D), Richardson at the latest discovered the "factual predicate" of his claims in Grounds two through four at the April 2019 hearing. *Id*. And so, the Warden reasons, Richardson is entitled to the later start date under section 2244(d)(1)(A)—May 2, 2019. *Id*.

In his Petition and brief in support, Richardson asserts that he is entitled to equitable tolling of the limitations period. Doc. 1, at 15; Doc. 1-2, at 5–6. That suggests that Richardson concedes that he filed his Petition beyond

the one-year statute of limitations. But in his traverse, Richardson disagrees with the Warden's statement about when the limitations period began to run. Doc. 9, at 10. And yet Richardson doesn't identify what section of 28 U.S.C. § 2244(d)(1) he believes applies to his case. He just concludes, without sufficient explanation, that the limitations period started "at the time of his filing of a Motion for Delayed Appeal"—May 22, 2020. *Id*. at 12; Doc. 8-1, at 46. Because Richardson has counsel, I am not required to construe Richardson's filings liberally. *See c.f. Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (a court "liberally construe[s]" pro se filings) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, I will evaluate in reverse order sections 2244(d)(1)(B) and (D), the only sections other than section 2244(d)(1)(A) that could apply to Richardson's case.[3]

### 1.2    *Factual predicate, section 2244(d)(1)(D)*

Subparagraph (D) turns on the "date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." As an initial matter, Richardson must have known the *factual predicate* of his claims before the date his retained attorney filed his motion for a delayed, direct appeal. The only clue Richardson provides about the date he discovered the *factual predicate* for his claims, however, is that he discovered his "right to appeal within the reasonable time period of a duly diligent person." Doc. 11, at 11. But the *factual predicates* relevant to Grounds

---

[3]    There is no reason to think that subparagraph (C) could apply.

two, three, and four is not Richardson's "right to appeal." Rather they are the events that occurred at his revocation hearing. So Richardson's "right to appeal" doesn't serve as the *factual predicate* for those claims.

To the extent it could be said that Richardson's claims in Grounds two, three, and four are related to and based on Richardson's alleged ignorance of his right to appeal, Richardson doesn't show that he was diligent in discovering *that* right. In support of his argument for a later start date, Richardson discusses *DiCenzi v. Rose*, 452 F.3d 465, 469 (6th Cir. 2006)). Doc. 11, at 10–11. But that case is inapposite.

In *DiCenzi*, the petitioner filed a federal habeas petition alleging that neither trial counsel nor the trial court advised him of his right to appeal at sentencing. 452 F.3d at 469. The Sixth Circuit held that under section 2244(d)(1)(A), DiCenzi's case became final more than a year before he filed his habeas petition, so the petition wasn't timely under that section. *Id*. But under section 2244(d)(1)(D), the Court reasoned, the petition *might have been* timely if DiCenzi hadn't discovered the *factual predicate* of his claim—that he had a right to appeal—until later. *Id*. at 469–70. The Court observed that about two years after DiCenzi was sentenced, he asked the public defender for help with his case and was told that he had a right to appeal. *Id*. The Court cited DiCenzi's correspondence with the public defender in August 2001, which was in the record, and commented that, thereafter, DiCenzi "immediately" filed a motion for leave to file a delayed appeal of his sentence. *Id*. at 467, 470.

Because the district court had not considered that evidence and related arguments, the Sixth Circuit remanded the case so the district court could evaluate whether DeCenzi acted with due diligence in discovering the *factual predicate* of his claim. *Id.* at 470–71.

Here, unlike in *DiCenzi*, Richardson has not provided any evidence about when he discovered his right to appeal. He only states that he "discovered his right to appeal within the reasonable time period of a duly diligent person." Doc. 11, at 11. That's not sufficient. As the Sixth Circuit has explained:

> for § 2244(d)(1)(D) to apply to a habeas petition, a petitioner must show that he could not have discovered the factual predicate for his habeas claim earlier through the exercise of due diligence. *See DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006) ("[T]he petitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim.") Bey neither alleges nor provides any reason to suppose that he not only did not but could not have discovered the alleged defect in his bind-over prior to 2008. In fact, he provides no information at all about how he came to learn about the use of a rubber-stamp on the return or even when, specifically, in 2008 he discovered it. As a result, it is impossible to infer from Bey's brief whether and to what extent he exercised due diligence. Bey thus has not met his burden of demonstrating that § 2244(d)(1)(D) applies.

*Bey v. Capello*, 525 F. App'x 405, 408 (6th Cir. 2013). Richardson, like *Bey*, "provides no information at all about how he came to learn" about his right to appeal "or even when, specifically," he discovered it.

11

And in *Ray v. Bunting*, No. 1:15-cv-906, 2016 WL 6246235, at *2 (N.D. Ohio Oct. 26, 2016) (Helmick, J.), another unit of this Court rejected a petitioner's argument that he was entitled to a later limitations start-date for his claim that he wasn't notified about his right to appeal. The court found that under section 2244(d)(1)(D), the petitioner hadn't shown that he was diligent in pursuing his rights:

> Ray provides no evidence that he did anything to protect his rights following his sentencing, offering instead only a conclusory allegation that he did not learn of his right to appeal until 2014. He does not allege that he performed or attempted to perform any research or that he asked his lawyer about the possibility of appealing his sentence. Instead, Ray attempts to rely solely on the failure of the trial judge to inform him of his right to appeal.

*Id.*; *see also Herrington v. Wainwright*, No. 1:19-cv-2405, 2020 WL 5984408, at *6 (N.D. Ohio May 20, 2020) ("Not only must Herrington demonstrate a date on which he learned of his right to appeal [under section 2244(d)(1)(D)], which he has not done, he must also demonstrate that he could not have discovered the factual predicate for his claims earlier through the exercise of reasonable diligence …. The record before this Court does not demonstrate that Herrington exercised due diligence to discover the factual basis for his claims.") (collecting similar cases), *report and recommendation adopted*, No. 1:19-cv-2405, 2020 WL 3887681 (N.D. Ohio July 10, 2020); *see also Shorter v. Richard*, 659 F. App'x 227, 232 (6th Cir. 2016).

In sum, Richardson hasn't shown under section 2244(d)(1)(D) "the date on which the factual predicate of [his] … claims presented could have been discovered through the exercise of due diligence." Moreover, as the Warden points out, Richardson "had an extensive criminal history which included imprisonment," so "he likely knew that he had a right to appointed counsel on appeal and a right to an appeal."[4] Doc. 8, at 13; *see also Ray*, 2016 WL 6246235, at \*2 ("Ray was convicted and served time at least twice prior to this latest conviction, … so it is unlikely that no judge or attorney had ever mentioned appellate rights to him. And even if that was the case, all it would have taken for Ray to learn of his right to appeal would have been for him to ask a public defender.").

### 1.2    *State impediment, section 2244(d)(1)(B)*

Under subparagraph (B), the limitations period begins when an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." Richardson asserts that "the impediment to direct review was created by a constitutional violation of the State. The State denied Petitioner's right by failing to appoint counsel or advice of right to appeal." Doc. 11, at 10. Richardson's argument fails because the

---

[4]    Richardson committed the underlying crimes in this case about two months after he finished serving four-and-a-half years in prison in another case. Doc. 8-1, at 148. The trial court commented that Richardson has had "37 prior arrest cycles" and enumerated 22 of them. Doc. 8-1, at 146–47, 149–50.

state's alleged deficiencies regarding Richardson's direct appeal rights aren't relevant to Richardson's inability to file his federal habeas petition. As the Sixth Circuit has explained:

> Miller alleged that the State of Michigan impeded the filing of his federal habeas corpus petition by failing to give him notice of his appeal rights at sentencing, by not timely appointing counsel to perfect a belated appeal, by delaying the preparation of the trial transcripts for an unspecified amount of time, and by not granting him due process during his direct appeal. Although these alleged actions may have interfered with Miller's direct appeal in state court in the early 1990s, Miller has failed to explain how the actions prevented him from filing his federal habeas corpus petition until 2001.

*Miller v. Cason*, 49 F. App'x 495, 497 (6th Cir. 2002); *see also Baker v. Wilson*, No. 5:06-cv-1547, 2009 WL 313325, at *8 (N.D. Ohio Feb. 6, 2009) (collecting cases). So subparagraph (B) doesn't apply.

### 1.3    When judgment is final, section 2244(d)(1)(A)

The limitations start-date in section 2244(d)(1)(A), therefore, is the only option that applies to Richardson's case. Under subparagraph (A), the limitations period began to run when Richardson's "judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." The trial court issued its judgment entry on April 3, 2019, the day after the probation revocation hearing.[5] Richardson had thirty days to appeal,

---

[5]     The Warden and Richardson cite the triggering event as the date that the probation revocation hearing took place—April 2, 2019. Doc. 8, at 10; Doc. 11, at 15. But the trial court issued its journal entry the next day, Doc. 8-1, at 36, so I use that date to start the calculation.

14

until May 3, 2019. *See* Ohio R. App. P. 4(A). Because Richardson didn't appeal, the limitations period started running the next day. *See Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000) (the statute of limitations begins running the day after the event or default). The one-year period ran undisturbed from May 4, 2019, until it expired on May 4, 2020. Richardson's federal habeas petition, filed in September 2021, was over a year late.

2. *Statutory tolling doesn't apply*

The statute of limitations is tolled for any period in which a properly filed petition for post-conviction relief "or other collateral review with respect to the pertinent judgment or claim" is pending before the state courts. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003) (quoting 28 U.S.C. § 2244(d)(2)). The statutory tolling provision does not "'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (citation omitted).

While a pending motion for delayed appeal in the Ohio court of appeals can toll the limitations period, the Ohio court of appeals' denial of such a motion doesn't restart the one-year limitations period. *See Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001). So the limitations period didn't restart when the Ohio court of appeals denied Richardson's motions for delayed appeal. *See id*. And because Richardson filed his motions for delayed appeal after his one-

15

year limitations period had already expired, there was nothing left for Richardson's motions to toll. *See Vroman*, 346 F.3d at 602.

### 3. Richardson isn't entitled to equitable tolling

Petitioners may also be entitled to "equitable tolling" when they have been "pursuing [their] rights diligently" and "some extraordinary circumstance" prevented them from timely filing their habeas petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Petitioners bear the burden of "persuading the court" that they are entitled to equitable tolling. *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).

In his petition brief, Richardson argues that he is entitled to equitable tolling. He asserts that he had a "lack of notice and … constructive knowledge of the filing requirement as well as his ignorance of legal proceedings and the lack of appellate counsel." Doc. 1-2, at 6–7. Richardson concedes that "the lack of knowledge will not in and of itself toll the running of the statute," and submits that equitable tolling "turns on the facts and circumstances of a particular case." *Id.* at 7. But Richardson doesn't provide sufficient facts or circumstances of his case from which one could determine the applicability of equitable tolling. To the extent Richardson's arguments in favor of a later start date under section 2244(d)(1) could be construed as an equitable tolling argument, it fails for the same reason—Richardson hasn't shown that he was pursuing his rights diligently and that some extraordinary circumstance

prevented him from timely filing his habeas petition. *See Holland*, 560 U.S. at 649; *Griffin*, 308 F.3d at 653.

Richardson's unrelated reference to the Covid pandemic and the Ohio Supreme Court's order tolling state court deadlines in March 2020, Doc. 11, at 13, is unavailing. First, that order didn't toll the federal court's deadlines. And second, Richardson doesn't show that that he was diligently pursuing his rights before March 2020. *See United States v. West*, 578 F. Supp. 3d 962, 966–67 & n.2 (N.D. Ohio 2022) ("West's failure to demonstrate that he diligently pursued his claims (or even took *any* action) before the COVID-19 health crisis took hold is fatal to his [equitable tolling] argument.").

Finally, Richardson hasn't alleged "actual innocence." So he doesn't show that he will suffer a "fundamental miscarriage of justice" if, due to the time-bar, the Court doesn't consider his claims. *See Patterson v. Lafler*, 455 F. App'x 606, 609 (6th Cir. 2012) ("[A] petitioner may also be eligible for equitable tolling if he demonstrates actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice.") (citing *Murray v Carrier*, 477 U.S. 478, 495–96 (1986)). Grounds two, three, and four are time-barred.

### Ground one fails on the merits

The parties agree that Ground one, which challenges the Ohio court of appeals' May 2020 rejection of Richardson's motion for leave to file a direct

delayed appeal, is timely under AEDPA's one-year statute of limitations. Doc. 8, at 22; Doc. 11, at 15.

### 1. *Legal standard*

Petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

### *Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher*

18

*v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue— not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id.* In *Maupin v. Smith*, the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent

state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental

miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the *contrary to* clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the *unreasonable application* clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent

or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted *contrary to*, or *unreasonably applied*, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an *unreasonable application* of law, the court uses an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

2.    *Analysis*

In Ground one, Richardson argues that the Sixth Amendment creates a right to appellate review and contends that the Ohio court of appeals denied him that right when it denied him leave to file a delayed appeal "absent a knowing voluntary waiver." Doc. 1, at 6; Doc. 1-2, at 8. Richardson explains that the record "is entirely absent of any indication the Richardson was informed of his right to appeal." Doc. 1-2, at 9; Doc. 11, at 15.

"[D]ue process is offended when a defendant who pled guilty is kept completely ignorant of his appellate rights." *Wolfe v. Randle*, 267 F. Supp. 2d 743, 746 (S.D. Ohio 2003) (citing *Peguero v. United States*, 526 U.S. 23 (1999)). To be properly informed, a defendant must be told of his right to appeal, the procedures and time limits involved, and the right to have the assistance of appointed counsel for that appeal. *Id*. at 748. A habeas petitioner has the burden to show by a preponderance of the evidence that he was not advised of these rights, *see Faught v. Cowan*, 507 F.2d 273, 275 (6th Cir. 1974), but "if he has personal knowledge of these rights" he "cannot base a claim on the court's failure to inform him of his appellate rights," *Wolfe*, 267 F. Supp. 2d at 748. *See also Peguero*, 526 U.S. at 29–30 (upon habeas review under 28 U.S.C. § 2255, a district court's failure to advise a criminal defendant of his appellate rights is harmless when the defendant had independent knowledge of his right to appeal).

The Ohio court of appeals denied without explanation Richardson's motions for leave to file a delayed appeal. Doc. 8-1, at 110, 112. The Warden submits that the Ohio court of appeals' decision is a merits-based decision that this Court reviews under AEDPA's deferential standard. Doc. 8, at 27–28. Richardson does not dispute that assertion. "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits," a presumption that the petitioner "can in some limited circumstances … rebut[]." *Johnson v. Williams*, 568 U.S. 289, 301 (2013); *see Smith v. Cook*, 956 F.3d 377, 386–87 (6th Cir. 2020). Richardson hasn't rebutted the *Johnson* presumption, so AEDPA deference applies to the Ohio court of appeals' decision rejecting Richardson's motions for delayed direct appeal. *See Smith*, 956 F.3d. at 386–87 ("*Johnson* teaches that the presumption prevails even when the state court's opinion wholly omits discussion of the federal claim.").

Here, as the Warden concedes, the transcript shows that the trial court didn't advise Richardson of his right to appeal.[6] Doc. 8, at 26; Doc. 8-1, at 169–82. But Richardson hasn't shown that he was "kept completely ignorant of his appellate rights." *Wolfe*, 267 F. Supp. 2d at 746. Richardson only reiterates that "the record is entirely absent of any indication that Richardson was

---

[6]     Richardson's retained counsel failed to file the relevant transcript with Richardson's motions for delayed appeal. *See* Doc. 8-1, at 46–76. So Richardson failed at that point to show that the trial court didn't advise him of his right to appeal, and the Ohio court of appeals' decision was not unreasonable for rejecting Richardson's motion for that reason alone.

24

informed of his right to appeal." Doc. 11, at 17. That may be, but it doesn't follow that Richardson was *completely ignorant of his appellate rights*. In *Wolfe*, the district court found that the petitioner "has successfully shown by a preponderance of the evidence that the trial court judge and his own counsel failed to advise him of his right to appeal." 267 F.Supp.2d at 749. The court explained:

> Petitioner offers ample evidence supporting his claim. Namely, Petitioner offers (1) his sworn declaration that neither his counsel or the trial court advised him of his appellate right and he did not learn that he could file a delayed appeal until informed by inmate clerks in 1999 (doc. 1); (2) Respondent's statements that Petitioner's defense counsel could not remember if he had advised Petitioner of his right to appeal (doc. 17); and (3) the transcript of the plea and sentencing which are devoid of notice of appeal (*Id*.). Respondent has been unable to offer any evidence showing that Petitioner knew of his appellate rights or was informed about them by either his counsel or the trial judge.

*Id*.

Richardson didn't submit to the Ohio court of appeals or this Court a sworn declaration that he didn't know he had a right to appeal, when he allegedly discovered that right, or evidence that his counsel hadn't advised him of his appellate rights off the record. In fact, when Richardson asked the Ohio court of appeals to reconsider its denial of his motions for leave to file a delayed appeal, Richardson wrote that he "was unable to secure funds to retain appellate representation until after thirty days had passed from [the April 3, 2019] sentencing entry." Doc. 8-1, at 123. That suggests that Richardson knew

he had a right to appeal. Richardson also knew that he had a right to appointed counsel, because the trial court in this case had previously appointed him counsel. *Id*. at 36.

Finally, Richardson's reliance upon *Scott v. Sloane*, No. 1:14-cv-1219, 2019 WL 91572 (N.D. Ohio Jan. 3, 2019), is unavailing. In *Scott*, the state court at resentencing didn't advise the defendant of his rights to appeal, appointed counsel, and transcripts at the state's expense. 2019 WL 91572, at *1. Scott timely appealed and filed a motion for appointment of appellate counsel, which the trial court denied. *Id*. The Ohio court of appeals dismissed sua sponte Scott's appeal because he didn't file the transcript, and then denied Scott's subsequent motion for leave to file a delayed appeal. *Id*. On federal habeas review, the district court found that Scott's claim was procedurally defaulted. *Id*. But the trial court's refusal to appoint Scott appellate counsel denied Scott a fundamental right, which served as cause to excuse the procedural default. *Id*. at *4. And because Scott was denied counsel altogether, prejudice was presumed. *Id*. The court wrote, "because the trial court expressly denied this fundamental right which resulted in dismissal of the appeal on procedural grounds, I conclude this error so tainted the appellate process as to deprive Scott the opportunity for meaningful review on the merits." *Id*. at n.4.

Here, the trial court didn't "expressly den[y]" Richardson's right to appointed counsel on direct appeal because Richardson, unlike Scott, hadn't

asked for appointed counsel. And the Ohio court of appeals didn't apply a procedural bar to Richardson's motions. So *Scott* isn't persuasive.

Richardson hasn't shown that the Ohio court of appeals' denial of his motions for leave to file a direct delayed appeal were "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103. Ground one fails on the merits. [7]

**Conclusion**

For the reasons set forth above, I recommend that Richardson's Petition be denied.

Dated: July 27, 2023

 */s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

---

[7]    Because I recommend that the Court find that Ground one fails on the merits, I don't address the Warden's argument that Ground one is not cognizable. Doc. 8, at 23–24.

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).